UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| DAVID A. CORDEN D/B/A INOVA AND D/B/A INOVA SYSTEMS and DAVID A. CORDEN and BARBARA L. CORDEN, CO-TRUSTEES OF THE CORDEN FAMILY REVOCABLE TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>LLOYD, GERSTNER & PARTNERS, LLC; LG&P, LLC; DAVID LLOYD and ROBERT GERSTNER, partners; each of the above entities and partners d/b/a LG&P IN-STORE AGENCY or LG&P IN-STORE AGENCY, U.S.A.,<br><br>Defendants. | Civil Action No. 15-3157 (SRC)<br><br>**OPINION & ORDER** |

**CHESLER**, District Judge

This matter comes before the Court upon Plaintiffs' filing of a motion for partial summary judgment as to certain royalties due (Docket No. 90), pursuant to Federal Rule of Civil Procedure 56(a). Defendants oppose this motion (Docket No. 91), and Plaintiffs have submitted a reply brief (Docket No. 92). The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiffs' motion will be denied without prejudice.

**I.   FACTUAL BACKGROUND**

This motion for partial summary judgment concerns whether, under the terms of the operative contract, Defendants owe Plaintiffs royalty payments following the termination of the

1

contract. In November 2011, the parties entered a contract (the "Agreement") that granted Defendants the right to manufacture, market, sell, and distribute a patented freestanding wall system designed by Plaintiffs in exchange for royalty payments. See Docket No. 90-2, Ex. A; Plaintiffs' Statement of Material Facts Not in Dispute ("Pls.' SUMF") ¶ 2; Defendants' Response to Plaintiffs' Statement of Material Facts Not in Dispute ("Dfs.' Response") ¶ 2. With respect to its duration, the Agreement provides that:

> The agreement remains in place unless terminated, amended or otherwise changed by one party . . . If the agreement is terminated for cause or otherwise (breach of this agreement), all outstanding commitments, orders or pending shipments must be fulfilled to the customer and restitution made even if both parties have agreed to terminate this agreement.

In 2014, Plaintiffs terminated the Agreement and filed a complaint in Tennessee state court, alleging that Defendants had underpaid royalties due. Defendants subsequently removed the case to federal court and transferred venue to this District. By letter dated April 15, 2014, Defendants' counsel notified Plaintiffs' counsel that Defendants had deposited $74,841.57 in the law firm's interest-bearing client trust account for "certain first quarter 2014 royalty amounts that David Corden claims are due to him under the terms [of the Agreement]." Docket No. 90-1, Ex. A. By letter dated July 28, 2014, Defendants' counsel provided for Plaintiffs' counsel a "second quarter 2014 report" and notified Plaintiffs' counsel that Defendants had deposited "an additional amount of $72,148.00 . . . pursuant to the enclosed royalty calculation." Docket No. 90-1, Ex. D.

In their motion, Plaintiffs contend that they are owed post-termination royalty payments amounting to $146,989.57, which represents the sum of Defendants' two post-termination deposits with their counsel. Defendants respond that nothing in the Agreement provides for the payment of royalties after the contract is terminated.

## II. LEGAL STANDARD

### a. Summary Judgment Under Rule 56

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party must support its motion by citing to "particular parts of materials in the record, including depositions, documents . . . or other materials." Fed.R.Civ.P. 56(c).

As the moving party, Plaintiffs bear the burden of showing that no genuine issue of material fact exists. Celotex, 477 U.S. at 323. An issue is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In the summary judgment context, "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the opposing party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Once the moving party satisfies its burden under Rule 56, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007). The non-movant may also "may not rest on speculation and conjecture in opposing a motion for summary judgment." Fiorentini v. William Penn Sch. Dist., 665 F. App'x 229, 233 (3d Cir. 2016).

### b. Contract Interpretation under Tennessee law

The Agreement provides that the contract is to be interpreted under Tennessee law. Docket No. 90-2, Ex. A. Under such law, the "cardinal rule of contract construction is to ascertain the intent of the parties and to effectuate that intent consistent with applicable legal

3

principles." Frizzell Constr. Co. v. Gatlinburg, L.L.C., 9 S.W.3d 79, 85 (Tenn. 1999). To effectuate the parties' intent, the court should heed the "express language of the parties." Harrell v. Minnesota Mut. Life Ins. Co., 937 S.W.2d 809, 814 (Tenn. 1996). The express language and terms of the contract "should be given their plain and ordinary meaning." U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co., 277 S.W.3d 381, 386 (Tenn. 2009). Further, all provisions of the contract should be construed in harmony with each other to promote consistency. Teter v. Republic Parking Systems, Inc., 181 S.W.3d 330, 342 (Tenn. 2005).

When construing a contract under Tennessee law, the court's first task is to determine, as a matter of law, whether the contract language is ambiguous. Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 889-90 (Tenn. 2002). The mere fact that two parties disagree about the interpretation of a specific provision of a contract does not create an ambiguity. Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc., 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994). Rather, the contract is ambiguous when it is "susceptible to more than one reasonable interpretation." Planters Gin Co., 78 S.W.3d 885, 889-90 (Tenn. 2002); see also Cookville Gynecology, 884 S.W.2d at 462 (ambiguity exists where the contract "may fairly be understood in more ways than one").

If the contract is clear and unambiguous, then the "literal meaning controls the outcome of the dispute." Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611 (Tenn. 2006). In such case, the court should not go beyond the four corners of the contract to ascertain the parties' intention. Rogers v. First Tennessee Bank National Ass'n, 738 S.W.2d 635, 637 (Tenn. Ct. App. 1987). Conversely, if the contractual language is ambiguous, then extrinsic or parol evidence may be used to "guide the court in construing and enforcing the contract." Allstate, 195 S.W.3d at 612. Such extrinsic evidence may relate to "the relations existing between the parties, the facts

4

surrounding them at the time when they entered into the agreement, and also their acts subsequent thereto." Faulkner v. Ramsey, 158 S.W.2d 710, 711 (Tenn. 1942); see also Stonebridge Life Ins. Co. v. Horne, 2012 WL 5870386, at *8 (Tenn. Ct. App. Nov. 21, 2012). For ambiguous contracts, summary judgment is not appropriate to determine the legal meaning of the contract. Planters Gin Co., 78 S.W.3d at 890; Spears v. Tennessee Farmers Mut. Ins. Co., 300 S.W.3d 671, 678 (Tenn. Ct. App. 2009)

### III. DISCUSSION

In its moving papers, Plaintiffs advance two arguments in support of receiving royalty payments after the Agreement was terminated. First, Plaintiffs contend that "Defendants have acknowledged royalties due Plaintiffs [sic]" through the act of depositing the funds with counsel. In the letter dated April 15, 2014, however, counsel for Defendants wrote that the deposited funds represented "amounts that David Corden claims are due to him under the terms" of the Agreement. Docket No. 90-1, Ex. A (emphasis added). Without evidentiary support to buttress Plaintiffs' conclusory assertion, this Court will not interpret Defendants' act of depositing of funds with counsel as a concession that the Agreement mandates post-termination royalty payments.

Plaintiffs also argue that the "plain language of the Agreement"—specifically the term 'restitution' in the paragraph subtitled 'Agreement Duration'—provides for royalty payments for commitments or orders outstanding at the termination of the Agreement. Docket No. 90, 4. Defendants counter that this interpretation "is flatly contradicted by the language contained within the Agreement's four corners," and Defendants likewise base their argument on the disputed paragraph. Docket No. 91, 7. Because there is a genuine issue of fact as to whether

5

'restitution' in the Agreement encompasses post-termination royalty payments, this Court will deny Plaintiffs' motion for partial summary judgment.

The "plain language of the Agreement" does not unambiguously indicate Plaintiffs' entitlement to post-termination royalty payments. Plaintiff David Corden is a patent-holding business owner who signed a licensing contract featuring a sophisticated sliding scale payment stream, a list of identified protected customers, and numerous provisions regarding the specific ambit of each party's role and responsibilities. In light of the technical sophistication evident in the contract, it is illuminating that Plaintiffs did not expressly stipulate in the Agreement that royalty payments were to continue following termination.

Based on the disputed term itself, it is not clear that 'restitution' comprises royalty payments subsequent to the termination of the contract. Restitution concerns the "[r]eturn or restoration of some specific thing to its rightful owner or status" and the "[c]ompensation for loss." Black's Law Dictionary (10th ed. 2014), available at Westlaw BLACKS. Such a loss compensation does not unequivocally include, by its definition, future payment streams after the contract terminates.

The disputed term 'restitution' should also be interpreted in light of the surrounding language in the disputed sentence. See, e.g., United States v. Stevens, 559 U.S. 460, 474 (2010) (Under the doctrine of *noscitur a sociis*, an ambiguous contract term may be "given more precise content by the neighboring words with which it is associated"). Following termination, the Agreement provides that "all outstanding commitments, orders or pending shipments must be fulfilled to the customer and restitution made." Docket No. 90-2, Ex. A (emphasis added). When interpreted in light of the preceding conjunctive clause, it is not unreasonable to interpret 'restitution' as regarding the parties' ongoing, post-termination obligations to customers, and not

to post-termination royalty payments between the parties. Under such an interpretation, 'restitution' relates to the customers' payment to Defendants in exchange for receipt of the wall system ordered prior to termination. The Agreement allows for unilateral termination by either party in writing, so it was possible for Plaintiffs to terminate the Agreement while Defendants had pending orders for which they had not been paid. Given such a possibility, it is reasonable to interpret 'restitution' as the compensation owed to Defendants for these pending but unpaid orders by their customers.

Plaintiffs' other arguments do not resolve the genuine factual dispute regarding whether post-termination royalty payments are due as "restitution" following termination of the contract. Plaintiffs note how the Agreement distinguishes between a 6% royalty and a 12% royalty, and limits the former "until such time as the agreement is terminated" but provides no such limitation for the latter. According to Plaintiffs, this distinction "demonstrate[s] that the parties were capable of considering the potential effect of termination of the Agreement upon the payment of royalties but chose not to attempt to make such restriction on the 12% royalties." Docket No. 92, 5. If the omission of the time limitation from the 12% royalty actually evinced the parties' deliberate choice, however, they could have made that selection expressly clear. Further, the 12% royalty switches to a 6% royalty upon reaching $20 million in cumulative sales, which provides a natural termination point for the 12% royalty. As such, the omission of such time-delimiting language regarding the 12% royalty may not necessarily evince a deliberate choice by the parties.

Plaintiffs argue that Defendants' interpretation of 'restitution' "bases payment of royalties on the vagaries of customers' scheduling . . . or worse it leads to mischief and manipulation," as Defendants could terminate the Agreement "to avoid payment of royalties on

7

sales already made but for which payment on the account has not been received." Docket No. 92, 5-6. Plaintiffs' slippery slope argument regarding the moral hazard created by Defendants' interpretation of 'restitution' ignores the reasonable possibility that the parties contracted for this interpretation as consideration for the significant risk incurred by Defendants that Plaintiffs might unilaterally exercise his right to terminate the Agreement and thereby end Defendant's revenue stream. In any event, however, Plaintiffs' hypothetical scenario does not suffice to render Defendant's interpretation unreasonable or violative of the Agreement's plain language.

For the forgoing reasons, this Court finds that it is ambiguous whether the contractual term 'restitution' in the Agreement provides Plaintiffs with post-termination royalty payments, as this term is susceptible to more than one reasonable interpretation. This ambiguity and susceptibility to multiple interpretations creates a genuine issue of fact under Tennessee law. As such, summary judgment is not appropriate to determine the legal meaning of the ambiguous contractual language. Accordingly, this Court denies Plaintiffs' motion for partial summary judgment regarding the post-termination royalty payments.

## IV. CONCLUSION

Accordingly, for the foregoing reasons; and for good cause shown;

**IT IS** on this 21th day of February, 2018;

**ORDERED** that Plaintiffs' motion for partial summary judgment pursuant to Fed. R. Civ. P. 56 is denied without prejudice.

    /s Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge